Janet Lorraine **WILLIAMS**, Appellant,

v.

**STATE of Texas**, Appellee.

**No. 14–04–00998–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 25, 2006.

Rehearing Overruled June 29, 2006.

---

Perry R. Stevens, Angleton, for appellant.

Jerilynn K. Yenne, Angleton, for appellee.

Panel consists of Justices ANDERSON, EDELMAN and FROST.

**OPINION**

JOHN S. ANDERSON, Justice.

Appellant, Janet Lorraine Williams, was convicted by a jury of terroristic threat. TEX. PENAL CODE ANN. § 22.07(a)(2) (Vernon Supp.2005). The jury assessed appellant's punishment at thirty days in the Brazoria County jail and a $1.00 fine. The sentence was suspended, and appellant was placed on community supervision for a period of six months. Appellant appeals on the grounds that (1) the evidence is legally insufficient to support the conviction, and (2) the trial court committed fundamental error by failing to clarify and address the issue that appellant's waiver of trial counsel was voluntarily and intelligently waived. We reverse and remand.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant's son attended a public elementary school located in Pearland, Texas. Appellant frequently ate lunch with her son at the school. In early 2003, Lisa

Welch was hired as a teacher's assistant at the school. Among Welch's duties was the supervision of the students eating their lunch in an assigned section of the school's cafeteria. During the spring of 2004, appellant became irritated with Welch's supervision of her son. Appellant made numerous complaints to the school's administration regarding Welch. Eventually, in an effort to resolve the situation, the school's administration arranged a conference on May 14, 2004 between appellant, Welch, and Liz Perdue, an assistant principal at the school.

Welch testified that during the conference, appellant became very irritated and irate. Welch testified appellant told Welch to never speak to her child again and "invited me to, in her words, a beat down in the parking lot. And then she threatened me again and told me that if I ever spoke to her child again, that she would whip me." Welch told the jury she was shocked by appellant's threat, immediately feared for her safety, and thought appellant might "come across the table or come around and try to strike me." Welch further testified that if there had not been a table and a door in the way, she would have immediately fled the conference room.

Assistant Principal Perdue, a friend of appellant's, testified that during the conference, appellant "stated that she didn't care if the police were called or the police were brought in. She wasn't scared of that. But that if [Welch] messed with her son or said anything to her son ... she made a threat. And I can't remember her exact words, but it was like, 'I'll beat you' or 'I'll whip your butt,' something like that." Perdue also testified she believed appellant can overreact in certain situations.

Carla Breaux, the school secretary, did not participate in the conference but heard

appellant state, as she was leaving the conference room: "Stay away from my child or I am going to whoop [sic] you." Appellant testified at trial and admitted she told Welch "what she do [sic] to my child, I would do to her." Appellant also testified she lived across the street from the school. Appellant's seventeen–year–old daughter testified appellant was very angry and upset with Welch. Appellant was later charged by information for making a terroristic threat. *See* TEX. PENAL CODE ANN. § 22.07(a)(2). Appellant pled not guilty.

On September 15, 2004, appellant appeared at trial without counsel. Prior to the voir dire, there was a brief discussion between the trial court and appellant regarding the decision to proceed *pro se:*

> THE COURT: Sarah, let's go on the record.
>
> Y'all weren't able to work something out between you?
>
> MS. WILLIAMS: Oh, no. They wanted to convict me.
>
> THE COURT: And you're going to represent yourself?
>
> MS. WILLIAMS: I would love to go before you, Your Honor; but I have to represent myself.
>
> THE COURT: Cause number 135,322, State of Texas versus Janet Lorraine Williams.
>
> Ms. Williams, you're charged with terroristic threat. It's a Class B misdemeanor, and that has a range of punishment of up to a 2,000–dollar fine and up to six months in jail or a combination of those two. Do you understand that?
>
> MS. WILLIAMS: Yes, sir.
>
> THE COURT: All right. Now, let me—I'm going to go over a few things with you about how the trial proceeds. You do not have an attorney.

MS. WILLIAMS: Yes.

THE COURT: Is that correct?

MS. WILLIAMS: Yes.

THE COURT: Yes, that's correct?

MS. WILLIAMS: Yes, that's correct. I'm sorry.

THE COURT: That's all right.

And you are going to represent yourself today?

MS. WILLIAMS: Yes, sir.

THE COURT: And you understand you have an experienced prosecutor up here?

MS. WILLIAMS: I understand she's tough. She is tough. She's sweet, though; but she's tough.

THE COURT: But you insist on representing yourself?

MS. WILLIAMS: I have to, Your Honor, because it's the principle. That's the only reason. If I was in the wrong, I felt I was really in the wrong, I would take whatever punishment you guys have for me.

THE COURT: Well, I don't know who is right or who is wrong, I don't know a fact one. I'll learn all about it just as quick as the jury learns about it.

There's a couple of things I want to explain to you. You understand you have a right to an attorney?

MS. WILLIAMS: Yes, sir.

THE COURT: You understand the State can't make you talk about the facts or give up—

MS. WILLIAMS: Yes.

THE COURT: Have you tried to hire an attorney?

MS. WILLIAMS: Well, I really can't afford one right now is the honest truth.

THE COURT: Have you gone out there to try to hire an attorney?

MS. WILLIAMS: I had an attorney for my child's case not too long ago, and that was kind of rough. Put me in a bind. And this all of a sudden began; so, I have to do it on my own.

THE COURT: If you are convicted— and let me explain how this works. The first phase, the jury hears only evidence as to whether or not you're guilty.

MS. WILLIAMS: Yes.

This discussion continued a few moments later:

THE COURT: You also have indicated that you wish to represent yourself.

MS. WILLIAMS: Correct.

THE COURT: Correct? Even though I admonished you that you have a right to an attorney?

MS. WILLIAMS: Yes, sir.

Also, at some point during that day, exactly when is unclear from the record, appellant executed a "Defendant's Waiver of Counsel" which stated:

I, Janet L. Williams, have been advised ... by the Court of my right to representation by counsel in the trial of the charge pending against me. I have been further advised that if I am unable to afford counsel, one will be appointed for me free of charge.

I understand that if a lawyer represented me in this case, the lawyer could cross-examine the State's witnesses, offer evidence on my behalf, file motions and argue law before the Court, provide me with legal advice, and, in general, do a better job of protecting my legal rights than I could without the assistance of a lawyer.

Understanding my right to have counsel appointed for me free of charge if I am not financially able to employ counsel, and of the risks and consequences of representing myself, I wish to waive

that right and request the Court to proceed with my case without an attorney being appointed for me. I hereby waive my right to counsel.

The trial was to a jury. During the trial, following appellant's testimony that she was unemployed and had recently filed for bankruptcy, in a conference out of the presence of the jury, the trial court stated there had not been an application made for appointed counsel and that the trial court had not received any financial information about appellant. Following this, the trial court allowed the trial to resume and, after hearing the evidence, the jury convicted appellant of making a terroristic threat. The jury assessed appellant's punishment at thirty days in the Brazoria County jail and a $1.00 fine. On September 16, 2004, the trial court suspended the sentence and placed appellant on community supervision for a period of six months. During the sentencing hearing, the trial court finally admonished appellant that she had a right to have an attorney appointed for her to handle any appeal if she could not afford to hire one. On October 12, 2004, the trial court held an indigency hearing, and the court determined appellant was indigent and appointed appellate counsel for appellant.

## DISCUSSION

### I. Terroristic Threat

■ In her first issue, appellant contends there is legally insufficient evidence showing a threat to Welch that placed her in imminent danger of serious bodily injury. Specifically, appellant argues there is legally insufficient evidence to prove beyond a reasonable doubt that (1) appellant intended to place Welch in fear of imminent serious bodily harm because her threats to Welch were conditional threats of future violence, and (2) appellant had

the ability to inflict serious bodily harm on Welch. We disagree.

■ When reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex.Crim.App.2000). The critical inquiry is whether, after viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *McDuff v. State*, 939 S.W.2d 607, 614, (Tex. Crim.App.), *cert. denied*, 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). This standard gives full play to the responsibility of the trier of fact to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

■ A person makes a terroristic threat if he threatens to commit any offense involving violence to any person or property with the intent to place any person in fear of imminent serious bodily injury. Tex. Pen.Code Ann. § 22.07(a)(2). Imminent means "[n]ear at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing; perilous." *In re A.C.*, 48 S.W.3d 899, 904 (Tex.App.-Fort Worth 2001, pet. denied) (quoting BLACK'S LAW DICTIONARY 750 (6th ed.1990)). The accused's threat of violence, made with the intent to place the victim in fear of imminent serious bodily injury, is what constitutes the offense. *Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim.App.1982). It is not necessary for the victim to actually be placed in fear of imminent serious bodily injury or for the accused to have the capability or the inten-

tion to actually carry out the threat. *Id.* The offense is completed if the accused, by his threat, sought as a desired reaction, to place a person in fear of imminent serious bodily injury. *Id.* at 306.

 Appellant argues that since her threats were conditional on the future occurrence of several possible events, such as Welch stepping out into the parking lot with appellant or inflicting harm on appellant's son, the evidence is legally insufficient as serious bodily injury is not imminent. However, conditioning a threat of harm on the occurrence of a future event does not necessarily mean that the harmful consequences are not imminent. *In re A.C.,* 48 S.W.3d at 904. Thus, in gauging imminence, we must look to the proximity of the threatened harm to the condition. *Cook v. State,* 940 S.W.2d 344, 348 (Tex. App.-Amarillo 1997, pet. ref'd). The focus of the inquiry should be whether the victim was afraid of imminent serious bodily injury at the time of the offense. *Stults v. State,* 23 S.W.3d 198, 205 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). The desired and sought after reaction of the victim, regardless of whether the threat was real or was carried out, is some evidence of the defendant's intent to place the victim in fear of imminent serious injury. *See Hadnot v. State,* 884 S.W.2d 922, 925–26 (Tex.App.-Beaumont 1994, no pet.). The requisite intent can be inferred from the acts, words, and conduct of the accused. *Turner v. State,* 600 S.W.2d 927, 929 (Tex. Crim.App.1980).

Welch testified appellant was very irate and very irritated during the May 14, 2004 conference. Welch also testified appellant threatened to beat her and that she was immediately afraid and feared appellant would come over the conference table and strike her. Assistant Principal Perdue, a friend of appellant's, testified appellant could overreact and had threatened Welch during the conference. Appellant herself admitted she told Welch that appellant would do to Welch whatever Welch did to appellant's child. Finally, appellant's daughter testified appellant was very upset and angry with Welch. There is ample evidence in the record for the jury to have found beyond a reasonable doubt that appellant intended to place Welch in fear of imminent serious bodily injury.

 Appellant also argues the evidence is legally insufficient as there was no evidence that, if an assault had occurred, appellant could inflict serious bodily injury on Welch. Appellant misstates the requirements of the offense. It is not necessary for the victim to actually be placed in fear of imminent serious bodily injury or for the accused to have the capability or the intention to actually carry out the threat. *Dues,* 634 S.W.2d at 305. The offense is completed if the accused, by her threat, sought as a desired reaction to place a person in fear of imminent serious bodily injury. *Id.* at 306. We overrule appellant's first issue.

## II. Waiver of Right to Trial Counsel

In her second issue, appellant, citing primarily to *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), contends the trial court committed reversible error by failing to clarify and address the issue that appellant's waiver of trial counsel was voluntarily and intelligently waived. Appellant also argues the trial court erred by not adequately addressing appellant's indigent status and her right to appointed trial counsel. Appellant argues this failure of the trial court to properly address appellant's decision to forego representation by trial counsel violated the Sixth and Fourteenth Amendments to the United States Constitution and abridged appellant's right to due process. We agree with appellant that the

trial court erred by failing to properly address appellant's indigent status and her right to appointed trial counsel, and therefore, appellant did not knowingly, intelligently, and voluntarily waive her right to trial counsel.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before she can be validly convicted and punished by imprisonment. *Faretta*, 422 U.S. at 807, 95 S.Ct. at 2527. The United States Supreme Court also found in the Sixth Amendment an independent constitutional right of an accused to conduct his own defense and held that the right to self representation does not arise from one's power to waive assistance of counsel. *Id.* at 819–820, 95 S.Ct. at 2533. The Supreme Court, citing to *Illinois v. Allen*, 397 U.S. 337, 350–351, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (Brennan, J., concurring), held that it is for the accused personally to decide whether assistance of counsel in his particular case is to his advantage, and his choice must be honored out of that respect for the individual which is the lifeblood of the law and even if his choice may ultimately be to his own detriment. *Id.* at 834, 95 S.Ct. at 2541.

However, to be constitutionally effective, the decision to waive counsel must be made knowingly and intelligently, as well as voluntarily. TEX.CODE CRIM. PROC. ANN. art. 1.051(g) (Vernon 2005); *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). To be made voluntarily, the decision must be uncoerced. *Collier v. State*, 959 S.W.2d 621, 626 (Tex.Crim.App.1997) (citing *Godinez v. Moran*, 509 U.S. 389, 401 n. 12, 113 S.Ct. 2680, 2687, 125 L.Ed.2d 321 (1993)).

A trial court is not required to make a formulaic inquiry into the defendant's age, education, background, or previous mental health history whenever an accused expresses a desire to represent himself. *Martin v. State*, 630 S.W.2d 952, 954 (Tex.Crim.App.1982). However, the record must contain proper admonishments concerning *pro se* representation and any necessary inquiries of the defendant, so that the trial court may make an assessment of the accused's knowing exercise of the right to defend himself. *Goffney v. State*, 843 S.W.2d 583, 584–85 (Tex. Crim.App.1992) (en banc) (citing *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim.App.1984)). The record must be sufficient for a reviewing court to make an assessment that the defendant was made aware of the dangers and disadvantages of the self-representation. *Goffney*, 843 S.W.2d at 585 (citing *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541; *Johnson v. State*, 760 S.W.2d 277, 279 (Tex.Crim.App.1988)). To assure protection of a right as fundamental as the right to be represented by counsel, courts indulge every reasonable presumption against waiver of counsel. *Trevino v. State*, 555 S.W.2d 750, 751 (Tex. Crim.App.1977) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). A heavy burden rests upon the prosecution to demonstrate an intelligent, voluntary, and knowing waiver of constitutional rights, particularly as ap-

plied to the right to retained or appointed counsel. *Id.*

Appellant, citing to Tex.Code Crim. Proc. Ann. art. 1.051(h),[1] argues the trial court erred in not addressing appellant's indigent status and appointing counsel for appellant. Tex.Code Crim. Proc. Ann. art. 1.051(c) directs the trial judge to appoint counsel if an indigent defendant is entitled to and requests appointed counsel. Tex. Code Crim. Proc. Ann. art. 1.051(c) (Vernon 2005); *Oliver v. State*, 872 S.W.2d 713, 715 (Tex.Crim.App.1994). This means an accused is not entitled to have counsel provided at government expense unless she can prove she is indigent. *Oliver*, 872 S.W.2d at 715. It also means counsel will not be appointed to represent her unless she wishes it. *Id.*

 The Texas statutory scheme, consistent with the Sixth Amendment requirements, imposes upon the trial judge the principle obligation to conduct such inquiry as may be necessary to determine whether the accused desires and is eligible for the appointment of an attorney. *Oliver*, 872 S.W.2d at 715–16. The appearance of a criminal defendant in court without counsel necessitates an examination by the trial judge to assure the defendant is actually aware of his right to retain an attorney and to discover whether he intends to do so. *Id.* at 716. A trial judge may "not sit idly by doling out enough legal rope for defendants to participate in impending courtroom suicide; rather, judges must take an active role in assessing the defendant's waiver of counsel." *Blankenship*, 673 S.W.2d at 583. A trial judge must investigate as long and as thoroughly as the circumstances of the case before him demand. *Id.* The fact an ac-

cused may tell the trial judge that she is informed of her right to counsel does not automatically end the judge's responsibility. *Id.* To be valid, a waiver of counsel must be made with an apprehension of the nature of the charges, the range of allowable punishments, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. *Id.* A trial judge can make certain an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which a waiver of counsel is tendered. *Id.* Failure to request counsel does not amount to the voluntary relinquishment or abandonment of a known right. *Oliver*, 872 S.W.2d at 715. Such a colloquy[2] between the defendant and the judge is not part of the adversary process, but is a preliminary matter necessary for the judge to discharge independent duties of his office. *Id.* at 716. "[I]f the trial judge is satisfied that the defendant cannot employ an attorney himself, he must appoint counsel for that purpose unless the defendant knowingly and voluntarily relinquishes his right to the assistance of counsel." *Id.* Without a knowing and voluntary relinquishment or abandonment of the right to appointed counsel, the trial judge may not conduct any adversary judicial proceedings until the accused is represented by an attorney. *Id.*

 Here, appellant appeared on the day of trial without an attorney, triggering the trial court's duty to conduct a pen-

---

1. Tex.Code Crim. Proc. Ann. art. 1.051(h) (Vernon 2005) provides: "A defendant may withdraw a waiver of the right to counsel at any time but is not entitled to repeat a proceeding previously held or waived solely on the grounds of the subsequent appointment or

retention of counsel." Tex.Code Crim. Proc. Ann. art. 1.051(h) (Vernon 2005).

2. "Colloquy" is defined as a usually formal conversation or conference. The Merriam-Webster Dictionary (New Edition, 2004).

etrating and comprehensive examination of all the circumstances under which appellant's waiver of counsel was tendered. The trial court asked appellant if she understood she had "a right to an attorney." In addition, the trial court asked appellant if she understood she was going up against an experienced prosecutor.[3] However, during the entire pre-trial colloquy between the trial court and appellant, not once did the trial court inform appellant of her right to have counsel appointed to defend her if she was unable to hire an attorney on her own. It was not until the sentencing hearing that, for the first time in open court, the trial court admonished appellant that, if she could not afford to hire an attorney, she had a right to have an attorney appointed for her to handle any appeal. In addition, the trial court was put on notice very early in the proceeding, prior to voir dire, that appellant was possibly indigent when in response to a question whether she had tried to hire an attorney, appellant responded: "Well, I really can't afford one right now is the honest truth." The trial court essentially repeated its question and appellant answered: "I had an attorney for my child's case not too long ago, and that was kind of rough. Put me in a bind. And this all of a sudden began; so I have to do it on my own." These statements by appellant clearly show the trial court was mistaken when it informed the parties in the middle of the trial that he had received no information on appellant's financial status prior to appellant's trial testimony. The trial court, having been put on notice of appellant's possible indigent status, instead of questioning appellant further regarding her financial situation, shifted its attention to the need for appellant to elect whether the jury or the trial court would assess punishment if appellant was found guilty.[4] The trial court failed in its preliminary duty to determine whether appellant was indigent, and therefore, qualified to receive appointed trial counsel.[5] Without knowing whether she was entitled to appointed trial counsel, appellant's waiver of her right to counsel was not made knowingly, intelli-

3. Compare the minimal examination performed in this case with that performed by the trial court in *Ganther v. State,* 187 S.W.3d 641, 643–44 (Tex.App.-Houston [14th Dist.] 2006, pet. ref'd). In *Ganther,* the trial court performed a thorough examination of Ganther's decision to waive his right to trial counsel. The trial court covered Ganther's educational background, his lack of formal legal training, in contrast to his extensive time spent studying law books in the law library, the fact Ganther had written many of the motions in his case, and based on that information, felt confident he was familiar enough with the legal process to conduct his own defense. *Id.* at 644–45. Further, the trial court warned Ganther he would be held to the same standard as an attorney, he had to follow the rules of evidence and procedure just as an attorney would, and he would have to face the consequences if he made a mistake. *Id.* Finally, the trial court expressly addressed Ganther's right to have an attorney appointed to defend him and his understanding of that right. The trial court directly asked Ganther if he wished to waive his right under the Sixth Amendment to have an attorney appointed to defend him. *Id.*

4. If the trial court had properly fulfilled its preliminary duty to determine appellant's indigent status, it would have discovered at this preliminary stage, rather than in the middle of trial, that appellant had filed for bankruptcy, that she was not employed, and that her sole current source of income was intermittent child support payments. These intermittent child support payments were the apparent reason appellant had retained an attorney on her "child's case," which she mentioned to the trial court.

5. After appellant had been convicted and sentenced, the trial court did conduct an indigency hearing and found appellant was indigent and appointed appellate counsel to handle her appeal. This hearing occurred on October 12, 2004. It is unlikely appellant's financial status had changed significantly in the month since her trial.

gently, and voluntarily as required by the Sixth and Fourteenth Amendments.

Appellant's execution of the "Defendant's Waiver of Counsel" does not change this result. Only after the trial court has made the determination that the defendant has voluntarily and intelligently waived her right to counsel is the trial court to provide the defendant with the written waiver. TEX.CODE CRIM. PROC. ANN. art. 1.051(g) (Vernon 2005). The State cites the case of *Blocker v. State*, 889 S.W.2d 506, 508 (Tex.App.-Houston [14th Dist.] 1994, no pet.) in support of its argument that a written waiver of counsel alone is sufficient to establish a knowing, intelligent, and voluntary waiver of counsel. *Blocker* can be distinguished on its facts. In *Blocker*, the defendant entered into a plea bargain with the State and therefore did not contest guilt, unlike the appellant here. *Id.* Further, the *Blocker* court held only that "[a] misdemeanor defendant who appears without counsel *to confess his guilt* need not be admonished of the disadvantages of self-representation prior to the court approving a waiver of the right to counsel and accepting a plea of guilty or no contest." *Id.* (emphasis added). Here, appellant pled not guilty thus triggering the trial court's duties under *Faretta.* As the trial court failed in its duty to determine appellant's entitlement to appointed counsel and inform appellant of that option, any waiver of counsel made by appellant, whether orally in open court, or in a written statement, was not made knowingly, intelligently, and voluntarily.

Next, we must determine the necessity of a harm analysis. No error, other than federal constitutional errors labeled as structural by the United States Supreme Court, *i.e.*, those involving fundamental constitutional systemic requirements, is categorically immune to harmless error analysis. *Manley v. State*, 23 S.W.3d 172, 175 (Tex.App.-Waco 2000, pet. ref'd.) (citing *Salinas v. State*, 980 S.W.2d 219, 219 (Tex.Crim.App.1998)). The United States Supreme Court has defined such errors as "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991). The United States Supreme Court has determined these fundamental constitutional rights include the right to counsel, the right to an impartial judge, the right to not have members of the defendant's race unlawfully excluded from a grand jury, the right to self-representation at trial, and the right to a public trial. *Id.* at 309–10, 111 S.Ct. at 1264–65. In *Manley*, the Waco Court of Appeals held that allowing a defendant to proceed *pro se* without properly determining whether he has knowingly and intelligently waived his right to counsel constituted error involving fundamental constitutional systemic requirements and is categorically immune to a harmless error analysis, *i.e.*, constitutes fundamental error. *Manley*, 23 S.W.3d at 175. The failure of a trial court to fulfill its duty to determine a defendant's entitlement to appointed counsel, which prevents a knowing, intelligent, and voluntary waiver of trial counsel, constitutes fundamental error, and there is no need to perform a harmless error analysis under TEX.R.APP. P. 44.2. We sustain appellant's second issue.

We reverse the judgment and remand the cause for a new trial.