*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-07-00474-CR

Viatric A. **HINOJOSA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court, Jim Wells County, Texas
Trial Court No. 39,420
Honorable L. Arnoldo Saenz, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Catherine Stone, Justice
                Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice

Delivered and Filed:  August 6, 2008

REVERSED AND REMANDED

Appellant Viatric Hinojosa was found guilty by the trial court of enticing a child and assessed punishment at 180 days confinement in the county jail, suspended and probated for a term of eighteen months.  On appeal, Hinojosa argues the trial denied her right to counsel and the evidence was legally and factually insufficient to support the conviction.  The parties both concede that the record does not substantiate the trial court's compliance with the necessary requirements set forth in *Faretta v. California*, 422 U.S. 806 (1975), but differ as to the remedy.

We reverse the judgment of the trial court and remand this matter to the trial court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

Hinojosa's case was called to trial on April 17, 2007, and Hinojosa represented herself at the bench trial. After some confusion as to whether Hinojosa's case was set for trial, Hinojosa complained that her witness, a police officer with the Alice Police Department, was not present. The trial court informed Hinojosa that it was too late to begin issuing subpoenas and instructed the State to present their case. The record does not contain any waivers by Hinojosa or admonishments given by the trial court.

The State first called Alice Police Officer Tony Aguilar who testified that in October of 2006, he was involved in an incident where a mother was seeking the return of her juvenile daughter. Another officer, no longer with the Alice Police Department, prepared a report of the incident. Aguilar was allowed to read the entire report into evidence without objection. The report indicated that J.V., the child's mother, did not approve of her daughter, A.Z., hanging around with Hinojosa and her daughter because the family was "gay lesbian." Aguilar further testified that J.V. was asked to provide an affidavit in which she "made it clear . . . that her daughter was staying someplace else against her wishes." Shortly before the State passed the witness, the prosecutor informed the court:

> And, Your Honor, if I may interrupt just a moment, we have to basically read the Information out loud to the Defendant. I'm not sure she is aware, even though it has been on file with the Court, if you want to take this opportunity to read what the Information or Complaint was to the Defendant.

The trial court complied; however, Hinojosa was never asked to enter a plea to the charges and never informed of the possible range of punishment. To the contrary, the State simply asked Aguilar if the Information alleged the correct penal code violation. During cross-examination by

Hinojosa, Aguilar admitted that he never investigated the charges beyond taking J.V.'s statement.

Willie Ruiz, the assistant principal at Alice High School, testified that, during the 2006-2007 school year, A.Z. had a total of fifty-two absences and J.V. had expressed concern and acknowledged that A.Z. was not living at home. J.V. testified that she and A.Z. fought over whether A.Z. could attend a concert with Hinojosa and her daughter, and shortly thereafter, A.Z. left home. A.Z. did not come home after the concert, but the following day, A.Z., Hinojosa and two Alice police officers came to the house to pick up A.Z.'s clothes and personal belongings. When J.V. complained, the officers told her that there was nothing they could do because A.Z. was seventeen years old. J.V. subsequently filed a complaint against Hinojosa with the Alice Police Department complaining that A.Z. was under the age of eighteen and that she had not given A.Z. permission to stay with Hinojosa. During cross-examination, J.V. acknowledged that A.Z. was only in Hinojosa's custody for a period of five days at which point A.Z. moved in with her godmother and then a different family. Hinojosa was convicted of the offense of enticing a minor.

## LEGAL SUFFICIENCY

Because legal sufficiency is a dispositive issue requiring acquittal, we first turn to Hinojosa's challenge that the evidence is legally insufficient to support her conviction.

### A. Standard of Review

In a legal sufficiency review, we examine the evidence in the light most favorable to the verdict, and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997). The standard of review is the same whether

the evidence is direct, circumstantial, or both. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

**B.      Enticing a Child – Texas Penal Code Section 25.04**

A person commits the offense of enticing a child "if, with the intent to interfere with the lawful custody of a child younger than 18 years, he knowingly entices, persuades, or takes the child from the custody of the parent or guardian or person standing in the stead of the parent or guardian of such child." TEX. PENAL CODE ANN. § 25.04 (a) (Vernon 2003). In the absence of evidence that the defendant intended to commit a felony against the child, the offense is a Class B Misdemeanor. *Id*. at § 25.04(b). An individual found guilty of a Class B Misdemeanor shall be punished by "(1) a fine not to exceed $2,000; (2) confinement in jail for a term not to exceed 180 days; or (3) both such fine and confinement." TEX. PENAL CODE ANN. § 12.22 (Vernon 2003).

**C.      Analysis**

The evidence clearly supports that A.Z. was only seventeen at the time of the incident. J.V. made it very clear to Hinojosa, the Alice Police Department and anyone who would listen that she wanted A.Z. returned to her custody. Additionally, because Hinojosa went to J.V.'s house, accompanied by two police officers, the trial court could have reasonably inferred that she was taking A.Z. from the custody of J.V., without J.V.'s consent. *See* TEX. PENAL CODE ANN. § 25.04 (a) (Vernon 2003). Accordingly, we hold that the evidence is legally sufficient to sustain the conviction.

**THE RIGHT TO COUNSEL**

Hinojosa asserts in her first two issues on appeal that the record lacks any waiver of her right to counsel or any admonishments under *Faretta v. California*, 422 U.S. 806 (1975).

Accordingly, Hinojosa argues that this failure of the trial court to properly address her decision to forego representation by trial counsel violated the Sixth and Fourteenth Amendments to the United States Constitution and abridged her right to due process.

## A.    Assistance of Counsel

The Sixth and Fourteenth Amendments to the Federal Constitution, as well as Article I, Section 10 of the Texas Constitution, guarantee a number of rights to the accused in a criminal proceeding.  Not the least of these rights is the right to counsel.  U.S. CONST. amend. VI, XIV; TEX. CONST. art. 1, § 10.  *See also Faretta*, 422 U.S. at 807; *Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963); *Moore v. State*, 999 S.W.2d 385, 396 (Tex. Crim. App. 1999).  An accused, in any state or federal court, must be afforded the right to the assistance of counsel before she can be validly convicted and punished by imprisonment.  *Faretta*, 422 U.S. at 807, *Argersinger v. Hamlin*, 407 U.S. 25, 30-31 (1972) (right to counsel in jailable misdemeanor cases).  Importantly, the right to counsel in misdemeanor cases is not lost merely because the trial court grants probation after assessing punishment with a period of confinement in jail.  *Warr v. State*, 591 S.W.2d 832, 835 (Tex. Crim. App. 1979).

The right of an accused to self-representation in her own defense is an independent right that does not arise from one's power to waive assistance of counsel.  *Faretta*, 422 U.S. at 819-820.  In *Johnson v. State*, 614 S.W.2d 116, 119 (Tex. Crim. App. 1981), the Court of Criminal Appeals determined that *Faretta* requirements are triggered simply by a defendant appearing without an attorney to contest his guilt.  *See also Williams v. State*, 194 S.W.3d 568, 577 (Tex. App.—Houston [14th Dist.] 2006) (holding that "[t]he appearance of a criminal defendant in court without counsel necessitates an examination by the trial judge to assure the

defendant is actually aware of his right to retain an attorney and to discover whether he intends to do so."), *aff'd*, 252 S.W.3d 353 (Tex. Crim. App. 2008).

Once the right to self-representation has been invoked, the trial judge is obligated to determine, at a minimum, whether the waiver of the right to counsel was knowing, intelligent, and voluntary. *Faretta*, 422 U.S. at 835. In order to do so, *Faretta* requires the trial court to sufficiently admonish a defendant regarding "the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id*. A trial judge may "not sit idly by doling out enough legal rope for defendants to participate in impending courtroom suicide; rather, judges must take an active role in assessing the defendant's waiver of counsel." *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). To decide whether a defendant's waiver is knowing and intelligent, the court must make an inquiry, evidenced by the record, that shows that the defendant has sufficient intelligence to demonstrate a capacity to waive his right to counsel and the ability to appreciate the practical disadvantage he will confront in representing himself. *Goffney v. State*, 843 S.W.2d 583, 584-85 (Tex. Crim. App. 1992); *Geeslin v. State*, 600 S.W.2d 309, 313 (Tex. Crim. App. 1980).

An appellate review indulges every reasonable presumption against the waiver of counsel. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Trevino v. State*, 555 S.W.2d 750, 751 (Tex. Crim. App. 1977); (holding that "'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.'") (footnote omitted). Moreover, it is the State that bears the heavy burden to demonstrate an intelligent, voluntary, and knowing waiver of constitutional rights,

particularly as applied to the right to retained or appointed counsel. *Williams*, 194 S.W.3d at 576-77.

## B.    Analysis

Just as in *Williams*, Hinojosa appeared on the day of trial without an attorney, triggering the trial court's obligation to conduct a comprehensive examination of whether the waiver of counsel was knowingly, intelligently and voluntarily made. *Id*. at 577. This necessarily included an understanding of all the circumstances under which her waiver of counsel was tendered. *Id*. at 578. Absent in the present case is any such inquiry or an admonishment of Hinojosa's right to have counsel appointed to defend her if she was unable to hire an attorney on her own. Although the State suggests that Hinojosa was admonished at her arraignment, the State concedes that the record does not support a knowing and intelligent waiver.

The record substantiates that the trial court failed to make a preliminary determination of whether Hinojosa was either indigent or, more specifically, qualified to receive appointed trial counsel. *Id*. at 578 n.5. *After* Hinojosa was convicted and sentenced on April 17, 2007, the record substantiates that the trial court conducted an indigency hearing, or at least considered Hinojosa's affidavit of indigency, and found that Hinojosa was indigent. On May 2, 2007, attorney Michael Guerra was appointed to represent Hinojosa on her post-trial motions, and on July 9, 2007, after the hearing on Hinojosa's motion for new trial, the court appointed appellate counsel. As the *Williams*' Court observed on similar facts, "[i]t is unlikely appellant's financial status had changed significantly in the month since her trial." *Id*. Without knowing whether she was entitled to appointed trial counsel, Hinojosa's waiver of her right to counsel, if any, could not have been made knowingly, intelligently and voluntarily as required by the Sixth and Fourteenth Amendments. *Id*.

## C.     Texas Rule of Appellate Procedure 44.2

Rule 44.2(a) categorizes the review of errors in a criminal case into two general categories: constitutional errors and non-constitutional errors. TEX. R. APP. P. 44.2. With regard to constitutional errors, if the error is a structural constitutional error, then the error is reversible without a harm analysis. TEX. R. APP. P. 44.2(a); *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (superceded by statute on other grounds). On the other hand, if the error is a nonstructural, constitutional error, an appellate court must reverse the trial court if it fails to find beyond a reasonable doubt that the error did not contribute to the judgment. TEX. R. APP. P. 44.2(a). All other errors, defects, irregularities or variances that do not affect the substantial rights of a defendant are disregarded. TEX. R. APP. P. 44.2(b).

As previously determined, the right to counsel is guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution. Thus, the error in this case was a constitutional error requiring a determination of whether the error is subject to harmless error review. TEX. R. APP. P. 44.2(a). Structural errors are constitutional violations "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991); *see also Cain*, 947 S.W.2d at 264 (determining that constitutional errors not subject to harm analysis are limited to "certain federal constitutional errors labeled by the United States Supreme Court as 'structural'"). The United States Supreme Court has determined these fundamental constitutional rights include the right to counsel, the right to an impartial judge, the right to not have members of the defendant's race unlawfully excluded from a grand jury, the right to self-representation at trial, and the right to a public trial. *Fulminante,* 499 U.S. at 309-10; *see also Manley v. State*, 23 S.W.3d 172, 175 (Tex. App.—Waco 2000, pet. ref'd) ("A complete denial of counsel falls within this category."). Because we

hold that proceeding to trial without a knowing, intelligent and voluntary waiver of counsel or the necessary admonishments against self-representation, is a structural, constitutional error, it is not subject to a harm analysis.[1]  TEX. R. APP. P. 44.2(a).  We, therefore, reverse the judgment of the trial court and remand the cause for a new trial.[2]

Rebecca Simmons, Justice

DO NOT PUBLISH

---

[1]  Because the right to counsel attaches for any jailable misdemeanor, *Argersinger*, 407 U.S. 25 at 30-31, and Hinojosa was charged with a class B misdemeanor, an offense punishable by confinement for up to 180 days in jail, whether the trial court determines punishment without confinement is irrelevant.  *See Warr*, 591 S.W.2d at 835. We, therefore, decline to follow the State's recommendation to remand this matter for a new punishment hearing.

[2]  Because our findings with regard to Hinojosa's Sixth Amendment right to counsel are dispositive of this appeal, we need not address Hinojosa's issue related to factual sufficiency.  *See* TEX. R. APP. P. 47.1 (encouraging concise opinions addressing only those issues "necessary to final disposition of the appeal").