

**NUMBER 13-07-00461-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**COSME SANCHEZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 107th District Court of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides**
**Memorandum Opinion by Justice Benavides**

On June 25, 2007, following a jury trial, Cosme Sanchez, appellant, was found guilty of three counts of aggravated assault. *See* TEX. PENAL CODE ANN. §§ 22.01, 22.02 (Vernon Supp. 2008). The trial court sentenced Sanchez to thirty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Sanchez raises two

issues on appeal.[1]  We affirm.

## I.  BACKGROUND

On June 19, 2006, Leonicio Ornelas and Ezequiel Lucio were drinking beer outside of the home Ornelas shared with his wife, Maribel de la Cruz, and their children.  Shortly before midnight, while de la Cruz was preparing a meal inside the house, men appeared at the gate surrounding Ornelas's property.[2]  Lucio recognized one of the men as a person he knew as "Cosme."  As Ornelas was opening the gate for the men, they pushed past him and began beating him and Lucio.  De la Cruz picked up her phone and began calling the police.  The men carried firearms.  One man demanded from Ornelas "everything he had" and began hitting Ornelas.  Ornelas fell into an outdoor sink, and the men continued hitting him.

Shortly after entering the yard and attacking Ornelas and Lucio, the men entered the house and encountered de la Cruz and her young son.  De la Cruz was still attempting to call the police, and one of the men slapped the phone out of her hand.  The men insulted de la Cruz and began demanding drugs and money.  She did not have any drugs, but she did give the men forty dollars.  The entire time this exchange occurred, the men were aiming guns at de la Cruz.  The men then pushed de la Cruz onto the bed and continued aiming their guns at her and her son.  One man grabbed her son near the throat,

---

[1] In his brief to this Court, Sanchez argues that:  (1) the evidence was legally insufficient to support the verdict on Count II of the indictment, charging him with the aggravated assault of Leonicio Ornelas; (2) the evidence was legally insufficient to support the verdict on Count I of the indictment, charging him with the aggravated assault of Maribel De La Cruz; and (3) his right to fair indigent representation was violated.  Because in his second issue, "[a]ppellant adopts the same arguments as noted in Issue #1, and argues that the same standard of review applies[,]" we will consider issues one and two as one argument.

[2] Ornelas's and Ezequiel Lucio's testimony indicate that two men came through the gate, but de la Cruz testified that there were either three or four men involved.

aimed his gun at him, and said he was "going to kill the bastard."  The man aiming the gun at de la Cruz told her not to look at them so she would not be able to recognize them, and warned her that if she did recognize them, she would be "worth shit."  She believed that meant the men were going to kill her.  Later, de la Cruz identified Sanchez in a photo lineup as one of the attackers.

On December 4, 2006, Sanchez was indicted on three counts of aggravated assault. *See id.* §§ 22.01, 22.02.  On May 16, 2007, a jury found Sanchez guilty on all three counts, and on June 21, 2007, the trial court imposed a sentence of thirty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice.  This appeal ensued.

## II.  LEGAL SUFFICIENCY

In his first issue, Sanchez argues that the evidence was legally insufficient to sustain his conviction on Counts I and II as charged in the indictment.

### A.     Standard of Review and Applicable Law

When an appellate court conducts a legal sufficiency review, we view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006).  The trier of fact is the sole judge of the credibility of the witnesses, the facts, and the weight given to testimony.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Jackson*, 443 U.S. at 318-19; *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).  We consider whether the jury reached a rational decision.  *Beckham,* 29 S.W.3d at 151.  We neither substitute our own

3

judgment for that of the trier of fact, nor reevaluate the weight and credibility of the evidence, whether circumstantial or direct. *Mosley v. State*, 141 S.W.3d 816, 821 (Tex. App.–Texarkana 2004, pet. ref'd); *Beckham*, 29 S.W.3d at 151. "[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (noting that a hypothetically correct jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried").

The penal code defines an "assault" as "intentionally or knowingly threaten[ing] another with imminent bodily injury . . . ." TEX. PENAL CODE ANN. § 22.01(a)(2). An assault becomes an "aggravated assault" when a person "uses or exhibits a deadly weapon during the commission of the assault . . . ." *Id.* § 22.02(a)(2).

### B.      Fatal Variance

Sanchez argues that, because the indictment charged Sanchez with "intentionally or knowingly threaten[ing] . . . with imminent bodily injury by **threatening to kill** . . . ," the State was required to prove that Sanchez threatened to kill both de la Cruz and Ornelas. (emphasis in original). *See Wray v. State*, 711 S.W.2d 631, 633-34 (Tex. Crim. App. 1986) (noting that "where the unnecessary matter is descriptive of that which is legally essential to charge a crime, it must be proven as alleged even though needlessly stated"); *Borrego v. State*, 800 S.W.2d 373, 376 (Tex. App.–Corpus Christi 1990, writ ref'd). Sanchez asserts that the State must prove that he threatened to kill de la Cruz and Ornelas because

4

the "threatening to kill" language is "descriptive of that which is legally essential to charge a crime." *See Wray*, 711 S.W.2d at 633-34. Sanchez claims the language is not mere surplusage because it is descriptive of the offense charged. *See Curry v. State*, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000) (explaining that "extra language is 'descriptive' of an element of the offense if it 'define[s] the offense more narrowly, place[s] it in a specific setting, or describe[s] the method by which it was committed.'") (quoting *Upchurch v. State*, 703 S.W.2d 638, 641 (Tex.Crim.App.1985)).

In *Gollihar v. State*, the Texas Court of Criminal Appeals expressly overruled the surplusage doctrine, which stated that an allegation in the charging instrument could be disregarded when (1) it was not an essential element of the offense charged; (2) it could be omitted without affecting the charge against the defendant; and (3) it could be omitted without detriment to the indictment. 46 S.W.3d 243, 257 (Tex. Crim. App. 2001). The court also overruled the exception to the surplusage rule that Sanchez appears to rely on in the present case. *Id.* at 250, 257. The exception provided "that where an extra or unnecessary allegation 'is descriptive of that which is legally essential to charge a crime, the State must prove it as alleged though needlessly pleaded.'" *Id.* at 250 (quoting *Eastep v. State*, 941 S.W.2d 130, 134 n.7 (Tex. Crim. App. 1997) (holding that a fatal variance is a variance between the indictment and the evidence presented at trial that is material and affects the defendant's rights)). In so ruling, the court reaffirmed the fatal variance doctrine, which directly applies to this case. *Id.* at 257; *see Auldridge v. State*, 228 S.W.3d 258, 261 (Tex. App.–Fort Worth 2007, pet ref'd) (stating that "Texas law no longer speaks in terms of surplusage" when conducting legal sufficiency reviews).

"[W]hen faced with a sufficiency of the evidence claim based on a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient." *Gollihar*, 46 S.W.3d at 257. A variance between the wording of the charging instrument and the evidence actually presented at trial is fatal when it is material and prejudices the defendant's substantial rights. *Id.* (citing *U.S. v. Sprick*, 233 F.3d 845, 853 ( 5th Cir. 2000)). To determine whether the variance is fatal, we must (1) determine whether the indictment as written sufficiently informed the defendant of the charges against him so that he could prepare an adequate defense, and (2) determine whether being prosecuted under the deficient charging instrument would subject the defendant to being prosecuted for the same crime at a later time. *Id.*

In the present case, the indictment informed Sanchez that he was charged with "intentionally or knowingly threaten[ing] . . . with imminent bodily injury by threatening to kill . . . ," while using or exhibiting a firearm during the assault. To convict Sanchez of aggravated assault under a hypothetically correct jury charge, the State was required to prove that Sanchez (1) intentionally or knowingly; (2) threatened another with imminent bodily injury; (3) while using or exhibiting a deadly weapon during the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2). A threat to kill is not a statutory element of an aggravated assault. *Id.* §§ 22.01(a)(2), 22.02(a)(2); *see Gollihar*, 46 S.W.3d at 254 (noting that a hypothetically correct jury charge comprises the statutory elements of the offense as modified by the charging instrument). Thus, even if Sanchez is correct that the State failed to prove that he threatened to kill Ornelas and de la Cruz, we conclude that the State was not required to prove that Sanchez made a specific threat to kill.

6

To convict Sanchez, if the "threatening to kill" language were omitted from the indictment, the State would still have to prove the elements included in the hypothetically correct jury charge. The indictment informed Sanchez that he was charged with intentionally or knowingly threatening imminent bodily harm to Ornelas, de la Cruz, and their son. The indictment also indicated that, while threatening imminent bodily harm to the aforementioned persons, Sanchez used or exhibited a deadly weapon, a firearm. The indictment provided the requisite notice to Sanchez. *See generally Santana v. State*, 59 S.W.3d 187, 195-96 (Tex. Crim. App. 2001). Additionally, Sanchez's prosecution under this indictment does not subject him to a second prosecution for the aggravated assault of de la Cruz or Ornelas. *See generally id.* We hold that the addition of the "threatening to kill" language was an immaterial variance and should not be included in the hypothetically correct jury charge in our legal sufficiency review. *See Gollihar*, 46 S.W.3d at 258.

## C.    Legal Sufficiency

"To constitute an offense under section 22.01(a)(2), threats may be conveyed by action or conduct as well as words." *De Leon v. State*, 865 S.W.2d 139, 142 (Tex. App.–Corpus Christi 1993, no pet.) (citing *McGowan v. State*, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984)); *see* TEX. PENAL CODE ANN. § 22.01(a)(2). The act of pointing a gun at another person may be sufficient conduct, which, by itself, can sustain a conviction for aggravated assault. *See Cantu v. State*, 953 S.W.2d 772, 775 (Tex. App.–Corpus Christi 1997, pet. ref'd).

Ornelas and Lucio both testified that, when they were attacked, the attackers were

holding firearms. While testifying, Ornelas related, in Spanish, what the men said while assaulting him. When asked what he understood the Spanish to mean, Ornelas stated, "[w]ell, probably that he was going to kill me."[3] Ornelas also said that he feared for his life and the lives of his family. Ornelas testified that, from the moment his attacker entered his property, the attacker never stopped aiming a gun at him. In *DeLeon v. State*, this Court held that brandishing a "'Rambo'-style" knife at another person was an aggravated assault, even if the victim could not remember whether the attacker said anything to him. 865 S.W.2d 139, 141-42 (Tex. App.–Corpus Christi 1993, no pet.); *see Gaston v. State*, 672 S.W.2d 819, 822 (Tex. App.–Dallas 1983, no pet.) (holding that defendant committed an aggravated assault by holding his hand over the mouth of the victim while also holding a shotgun in his other hand which was in close proximity to the victim).

De la Cruz testified that the attackers entered the house and began pointing guns at her, which they kept aiming at her while they were in her house. The men also pushed her down on her bed and continually insulted her. De la Cruz stated that, while the men were in her house, demanding money and drugs, and pointing their guns at her and her child, they told her to not look at them so that she could not recognize them. She testified that they warned her that if she did recognize them, "she was going to be worth shit," which she took to mean that "they were going to kill" her. Additionally, during her testimony, de

---

[3] Sanchez asserts that because the statements made in Spanish to Ornelas were not translated, they are not in the record. However, what Ornelas testified that he understood the Spanish to mean was before the jury. Because the accuracy of Ornelas's translation is a question for the factfinder, Sanchez should have sought to impeach the translation. *See Garcia v. State*, 887 S.W.2d 862, 875 (Tex. Crim. App. 1994), *overruled on other grounds*, *Hammock v. State*, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001). Sanchez did not do so.

la Cruz's attorney asked whether the defendant "[i]s . . . the man who threatened to kill you?" She answered, "Yes."

Sanchez argues that the penal code requires a threat of imminent bodily injury but that, at best, the State only proved a conditional threat of future harm to de la Cruz. *See* TEX. PENAL CODE ANN. § 22.01. *But see Williams v. State*, 194 S.W.3d 568, 574-75 (Tex. App.–Houston [14th Dist.] 2006) (holding that, while a threat may be conditioned upon future events, such threat may still be sufficiently imminent), *aff'd*, 252 S.W.3d 353 (Tex. Crim. App. 2008). "However, conditioning a threat of harm on the occurrence of a future event does not necessarily mean that the harmful consequences are not imminent." *Williams*, 194 S.W.3d at 575. To determine whether Sanchez threatened imminent harm, "we must look to the proximity of the threatened harm to the condition" focusing on "whether the victim was afraid of imminent serious bodily injury at the time of the offense." *Id.* Here, the condition was whether de la Cruz would recognize the men. Should she recognize them, she believed they would kill her. De la Cruz testified that she was scared, and she continually had a gun or guns pointed at her. The threat of harm was sufficiently imminent as to not be overcome by the purported condition. *Id.*

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found that Sanchez threatened imminent bodily harm to both Ornelas and de la Cruz while using or exibiting a deadly weapon. *See* TEX. PENAL CODE ANN. § 1.07(17)(A) (Vernon Supp. 2008) (defining "deadly weapon" to include a firearm). Therefore, the evidence is legally sufficient, and Sanchez's first issue is overruled.

## IV. RIGHT TO FAIR INDIGENT REPRESENTATION

In his second issue, Sanchez argues that his "right to fair indigent representation was violated when appellant's defense counsel never visited him in jail to prepare for trial," in violation of code of criminal procedure article 1.051(a). *See* TEX. CODE CRIM. PROC. art. 1.051(a) (Vernon Supp. 2008). Sanchez asks this Court to follow a bright-line rule whereby a counsel's failure to visit a defendant in jail prior to trial is a per se violation of article 1.051(a). *See id.*

On July 20, 2007, Sanchez raised this issue in a motion for new trial.[4] *See* TEX. R. APP. P. 33.1(a)(1) (requiring that, to preserve error, a party must make a timely request, objection or motion). In an August 2007 docket sheet entry, the trial court set a hearing date on the motion. On September 4, 2007, because the trial court did not rule on the motion within seventy-five days of imposing Sanchez's sentence on June 21, 2007, the motion was deemed denied under rule 21.8. *See* TEX. R. APP. P. 21.8; *Stokes v. State*, 277 S.W.3d 20, 21 (Tex. Crim. App. 2009) (noting that if the trial court does not rule on the motion within seventy-five days of imposing sentence, the motion is deemed denied); *see also Galindo v. State*, 2009 Tex. App. LEXIS 2807, at *8 (Tex. App.–Corpus Christi 2009, no pet. h.) (mem. op.). On September 6, 2007, however, during a hearing on the motion for new trial, the trial judge orally denied the motion. The State argues that Sanchez failed to properly present to the trial court his motion for new trial, thus failing to preserve this issue for our review. *See* TEX. R. APP. P. 21.6 ("The defendant must present the motion for new trial to the trial court within 10 days of filing it, unless the trial court in

---

[4] No objection or request regarding this issue appears in the record prior to the motion for new trial. *See* TEX. R. APP. P. 33.1(a)(1).

its discretion permits it to be presented and heard within 75 days from the date when the court imposes or suspends sentence in open court."); *id.* § 33.1.

"A defendant is required to 'present' a motion to the trial court within ten days of filing it, unless the court, in its discretion, extends that time period." *Stokes*, 277 S.W.3d at 21 (citing TEX. R. APP. P. 21.6). "The purpose of the presentment rule is 'to put the trial court on actual notice that a defendant desires the trial court to take some action on the motion for new trial such as a ruling or a hearing on it.'" *Id.* (citing *Carranza v. State*, 960 S.W.2d 76, 78 (Tex. Crim. App.1998)). The movant has "the burden of actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court." *Carranza*, 960 S.W.2d at 79. However, the movant must do more than merely file the motion. *Stokes*, 277 S.W.3d at 21; *see Cozzi v. State*, 160 S.W.3d 638, 641 n. 5 (Tex. App.–Fort Worth 2005, pet. ref'd) (noting that a docket entry stating "motion for new trial filed" was not sufficient to show presentment). Therefore, to have preserved this issue, Sanchez must have presented his motion to the trial court within ten days of filing it.[5] *See* TEX. R. APP. P. 21.6; *Stokes*, 277 S.W.3d at 21.

We find no record evidence indicating that Sanchez presented his motion for new trial to the trial court within ten days of filing it. There is no docket entry during the requisite time period indicating that a hearing on the motion was set.[6] *See Morrow v. State*, 139 S.W.3d 736, 746 (Tex. App.–Texarkana 2004, no pet.). The trial court did not make a

---

[5] There is no indication in the record that the trial court extended the time period for Sanchez to present his motion. *See Stokes*, 277 S.W.3d at 21.

[6] On July 20, 2007, Sanchez filed the motion. On August 13, 2007, more than ten days after the filing of the motion, a hearing on the motion was set.

written ruling on the motion during the seventy-five day period. No hearing was held on the motion within seventy-five days of the filing of the motion. *Id.* We hold that Sanchez has failed to preserve this issue for our review. We overrule Sanchez's second issue.

### V. Conclusion

Having overruled Sanchez's issues, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
*See* TEX. R. APP. P. 47.2(b)

Memorandum Opinion delivered and
filed this the 4th day of June, 2009.