**Affirmed and Opinion Filed June 2, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01187-CR

**RICHARD GEORGE FLECK, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 6**
**Collin County, Texas**
**Trial Court Cause No. 006-82469-2014**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Myers, and Justice Evans
Opinion by Chief Justice Wright

Appellant Richard Fleck appeals his conviction for making a terroristic threat. The trial court found appellant guilty of making a terroristic threat and sentenced him to 100 days' confinement. For the reasons that follow, we affirm the trial court's judgment. Because the issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4.

In his sole point of error, appellant contends the evidence presented at trial "was factually insufficient to support a conviction." Specifically, appellant claims "it is unclear if an actual threat was made." The State responds that the evidence of witness testimony was sufficient to support appellant's conviction.

The Texas Court of Criminal Appeals abolished the factual sufficiency standard of review, concluding no "meaningful distinction" existed between that standard and the legal

sufficiency standard. *Howard v. State*, 333 S.W.3d 137, 138 n.2 (Tex. Crim. App. 2011) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). Under the legal sufficiency standard, we consider the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences from that evidence, a rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011). Because the fact finder is the sole judge of the witnesses' credibility and the weight to be given the evidence, we defer to the trier of fact's resolution of any conflicts in testimony, weight of the evidence, and inferences drawn. *See Brooks*, 323 S.W.3d at 899.

Pursuant to section 22.07 of the penal code, a person commits the offense of making a terroristic threat if he threatens to commit any offense involving violence to any person or property with intent to place any person in fear of imminent serious bodily injury. TEX. PENAL CODE ANN. § 22.07(a)(2) (West 2011). A threat is defined as "a declaration of intention or determination to inflict punishment, loss, or pain on another, or to injure another by the commission of an unlawful act." *Cook v. State*, 940 S.W.2d 344, 347 (Tex. App.—Amarillo 1997, pet. ref'd). The information in this case, in relevant part, alleged that appellant "did then and there intentionally threaten to commit an offense involving violence to person, namely, aggravated assault with a deadly weapon with intent to place Malinda Sabes in fear of imminent serious bodily injury."

Appellant and the complainant, Malinda Sabes, were involved in a dating relationship. On December 20, 2013, appellant began yelling at Sabes, accusing her of infidelity. Sabes' sister, Latreece Brown, was present for the confrontation.

Sabes testified that appellant wanted her to go into the bedroom with him so he could physically "check" her to determine if she had recent intercourse. When Sabes refused, appellant

told her "We'll just wait till later. Wait till you come to the room." The confrontation lasted for hours and continued to escalate. At one point appellant was arguing with Brown, "got into her face," and drew his fist back like he was going to hit her. Appellant kept telling Sabes to "come to the room" and "at 4:00" she would see what was going to happen. Sabes expected a physical altercation if she went into the bedroom with appellant. Sabes and Brown both testified that appellant hit Sabes in the side of the head more than once. Sabes told appellant he should leave her house but appellant refused. Appellant told Sabes he would "double-tap" her from blocks away and that "she wouldn't even see it coming," indicating he would shoot her with two quick bullets. Sabes indicated the only reason appellant did not start "wailing on her" was because her sister was present. During the argument, appellant repeatedly told Sabes "I'm gonna beat you" and "I'm gonna kill you." Brown testified appellant said he could hit both of them before they could call the police. Brown also heard appellant tell Sabes he would have some boy shoot her from a mile away. Finally Sabes realized the danger of the situation so she and Brown left the apartment together, hid in her car, and called 9-1-1.

When the police arrived, they first met with Sabes while she and Brown were still outside the apartment, hiding from appellant. The police took the report, told appellant he had to leave the premises, and escorted him to his vehicle.

After appellant and the police left the premises, Sabes and Brown drove to a gas station to buy cigarettes. On their way to the station, they became aware appellant was following them. Sabes drove through the parking lot of the gas station but was afraid to stop. She exited the parking lot and headed across a bridge to another station that had better lighting and more people around for safety. As Sabes was crossing the two-lane bridge, appellant pulled into the oncoming traffic lane and passed her, made a U-turn, and stopped in the middle of the road, blocking both lanes of traffic. Sabes then quickly put her car in reverse and appellant followed. Once again, the

–3–

sisters called 9-1-1. Appellant followed Sabes for another short period and then he turned off and drove another direction.

Appellant testified at trial and conceded that he and Sabes had been arguing for several hours. He contends the two were arguing because he wanted to move out and get his own apartment and Sabes did not want him to go. He claims he never threatened Sabes. Appellant admitted he received a criminal trespass warning by the police. However, appellant also stated that after the police made him leave the apartment, he saw Sabes driving by and he followed her. He admitted pulling up beside Sabes and looking into her car "like what the hell is going on?" Appellant stated he "didn't necessarily think it was a good idea" to confront Sabes, but he didn't see any harm since it was a public place.

In our review of the evidence, we find some conflicting testimony between the sisters who claim multiple threats were made by appellant, and testimony by appellant who claims no threat was ever made. However, by his own admission, appellant followed Sabes and blocked the road in order to talk to her after being told to get away from Sabes by the police. Viewing the evidence under the appropriate standard, we find ample evidence in the record for a rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. *See Williams v. State*, 194 S.W.3d 568, 575 (Tex. App.—Houston [14th Dist.] 2006) *aff'd,* 252 S.W.3d 353 (Tex. Crim. App. 2008). We therefore overrule appellant's single point of error.

In conclusion, we affirm the trial court's judgment.


Do Not Publish
Tex. R. App. P. 47.2(b).
141187F.U05

/Carolyn Wright/
CAROLYN WRIGHT
CHIEF JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

RICHARD GEORGE FLECK, Appellant

No. 05-14-01187-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 6, Collin County, Texas
Trial Court Cause No. 006-82469-2014.
Opinion delivered by Chief Justice Wright.
Justices Myers and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 2, 2015.