PD-1188-15

PD-1188-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/11/2015 5:29:38 PM
Accepted 9/16/2015 11:32:35 AM
ABEL ACOSTA
CLERK

NO. _____
Court of Appeals No.  **11-13-00217-CR**

TO THE
**COURT OF CRIMINAL APPEALS
OF TEXAS**

**CHRISTOPHER ANTHONY BARSKI**
Petitioner,

V.

**THE STATE OF TEXAS,**
Appellee.

**PETITION FOR DISCRETIONARY REVIEW**

**Paul Francis**
**State Bar No.  07359600**
**P.O. Box 13369**
**1178 West Pioneer Parkway**
**Arlington TX 76013-6367**
**(817) 543-2600 Telephone**
**(817) 549-7098 Facsimile**
**pfrancis@birch.net E-mail**

**ATTORNEY FOR PETITIONER,
CHRISTOPHER ANTHONY
BARSKI**

FILED IN
COURT OF CRIMINAL APPEALS

September 16, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF TRIAL JUDGE, PARTIES TO JUDGMENT OR ORDER, AND COUNSEL

TRIAL JUDGE:                        The Honorable Elizabeth Berry, judge of the 432nd of Tarrant County, Texas

APPELLANT:                       Christopher Anthony Barski

COURT APPOINTED
COUNSEL ON APPEAL:           Paul Francis
1178 W. Pioneer Parkway
Arlington TX 76013

COUNSEL AT TRIAL:             Christopher Anthony Barski, *pro se*
Tarrant County Jail/CID #0813879
100 N Lamar
Fort Worth TX 76102-1954

                                          Stephen Gordon/Standby Counsel
2101 Moneda St
Fort Worth, TX 76117

APPELLEE:                         The State of Texas

COUNSEL ON APPEAL:            Debra Windsor
Assistant District Attorney
Tarrant County Justice Center
401 W. Belknap
Fort Worth TX 76196-0001

COUNSEL AT TRIAL:             Jacob Mitchell
Tarrant County Justice Center
401 W. Belknap
Fort Worth TX 76196-0001

# TABLE OF CONTENTS

IDENTITY OF TRIAL JUDGE, PARTIES TO JUDGMENT OR
ORDER, AND COUNSEL ..................................................................ii

TABLE OF CONTENTS ...............................................................iii

INDEX OF AUTHORITIES ........................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ...................................1

STATEMENT OF THE CASE.................................................................1

STATEMENT OF PROCEDURAL HISTORY ...........................................2

GROUNDS FOR REVIEW (ISSUES) ......................................................2

Does the persistence of a defendant in demanding to represent himself constitute a knowing and intelligent waiver of counsel when the trial court does not explore alternatives to dissatisfaction with counsel and fails to cover nature of the charges, possible defenses to the charges and circumstances in mitigation thereof as part of the *Faretta* hearing, and the defendant indicates he is essentially ignorant of procedural and evidence law.

ARGUMENT ......................................................................................4

PRAYER FOR RELIEF ......................................................................20

CERTIFICATE OF COMPLIANCE (word count) ...................................21

CERTIFICATE OF SERVICE .................................................................21

APPENDIX .......................................................................................22

# INDEX OF AUTHORITIES

Cases

*Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 63 S. Ct. 236, 87 L. Ed. 268 (1942)..................................................................................................14

*Blankenship v. State*, 673 S.W.2d 578 (Tex. Crim. App. 1984) .............. 12, 16

*Chadwick v. State*, 309 S.W.3d 558 (Tex. Crim. App. 2010) ...........................3

*Collier v. State*, 959 S.W.2d 621 (Tex.Crim.App.1997) ..................................11

*Crawford v. State*, 136 S.W.3d 417 (Tex. App.—Corpus Christi 2004, no pet.)..................................................................................................3, 13

*Ex parte Davis*, 818 S.W.2d 64 (Tex. Crim. App. 1991) .......................................14

*Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)..........10

*Fernandez v. State*, 283 S.W.3d 25 (Tex. App.—San Antonio 2009, no pet.) ....................................................................................................12

*Fulbright v. State*, 41 S.W.3d 228 (Tex. App.—Fort Worth 2001, pet. ref'd) ........10

*Geeslin v. State,* 600 S.W.2d 309 (Tex.Crim.App. [Panel Op.] 1980) ...........10

*Grant v. State*, 255 S.W.3d 642 (Tex. App.—Beaumont 2007, no pet.)........18

*Indiana v. Edwards*, 554 U.S. 164, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008)................................................................................................3, 15

*Johnson v. State*, 760 S.W.2d 277 (Tex. Crim. App. 1988)............................11

*Manley v. State*, 23 S.W.3d 172 (Tex. App.—Waco 2000, pet. ref'd) ...........11

*Martinez v. State,* 163 S.W.3d 88 (Tex. App.—Amarillo 2004, no pet.)................14

*State v. Guerrero*, 400 S.W.3d 576 (Tex. Crim. App. 2013)............................15

*v. State*, 24 S.W.3d 456 (Tex. App.—Corpus Christi 2000, no pet.) ......................16

*Webb v. State*, 533 S.W.2d 780 (Tex. Crim. App. 1976) .......................................14

*Williams v. State*, 194 S.W.3d 568 (Tex. App.—Houston [14th Dist.] 2006) ..................................................................................... 11, 12

*Williams v. State*, 252 S.W.3d 353 (Tex. Crim. App. 2008) .................... 15, 19

*Williams v. State*, 925 S.W.2d 272 (Tex. App.—Corpus Christi 1996, no pet.)..................................................................................................11

NO. _____

TO THE
**COURT OF CRIMINAL APPEALS
OF TEXAS**

**CHRISTOPHER ANTHONY BARSKI**
Petitioner

**V.**

**THE STATE OF TEXAS**
**Appellee**

**PETITION FOR DISCRETIONARY REVIEW**

To the Honorable Court of Criminal Appeals of Texas:

Petitioner, Christopher Anthony Barski, submits this petition for discretionary review and requests that the Court consider the following issues:

**I.**

STATEMENT REGARDING ORAL ARGUMENT

Petitioner waives oral argument unless the state is granted oral argument.

**II.**

STATEMENT OF THE CASE

APPELLANT, CHRISTOPHER ANTHONY BARSKI, was indicted

for Aggravated Sexual Assault Child Under 14 (CR 11) The State abandoned

1

all but the allegations contained in Count II, a first degree felony. (4 RR 12)

He entered a plea of not guilty to the indictment. (4 RR 18) A jury tried the issue of guilt-innocence and convicted Appellant of Aggravated Sexual Assault Child Under 14. (CR 117, 132) The jury assessed punishment at 24 years prison. (CR 132, 7 RR 44)

## III.

## STATEMENT OF PROCEDURAL HISTORY

The Court of Appeals assigned case number 11-13-00217-CR. The judgment (and opinion) of the Court of Appeals affirming the trial court was issued August 21, 2015. A copy of the judgment and opinion is attached as an Appendix to this Petition.

## IV.

## GROUNDS FOR REVIEW

1. The court of appeals committed error by incorrectly applying the law for *pro se* representation in its review of the trial court's actions. The court of appeals bases its affirmance on the assertion that persistence in a desire for self-representation is determinative upon finding that sufficient warnings were given by the trial court, but the record here shows the answers and conduct of the defendant indicated that the request was not made intelligently and knowingly and all the required matters were not covered,

2

including possible alternatives to the expressed dissatisfaction by the defendant with his court-appointed counsel. The determination of "intelligently and knowingly" were made without regard to the responses and conduct of the defendant, which is in conflict with *Crawford v. State*, 136 S.W.3d 417 (Tex. App.—Corpus Christi 2004, no pet.) a case dealing with waiver of a right to *pro se* appellate representation. Also in light of *Indiana v. Edwards*, 554 U.S. 164, 176-77, 128 S. Ct. 2379, 2387, 171 L. Ed. 2d 345 (2008) (Mentally ill defendant) and *Chadwick v. State*, 309 S.W.3d 558, 563 (Tex. Crim. App. 2010) the approval should not be made following a rote recitation of factors, but individualized consideration of the defendant's responses indicative of his intelligent and knowing waiver in light of his comprehension of same. Appellant is not contending that he was mentally ill. Appellant cites the *Indiana* and *Chadwick* cases for the proposition that the analysis under *Faretta* does not stop with simply going through a checklist with a defendant, but must include his responses and conduct evidencing more than bewilderment at the process coupled with his intent to proceed anyway.

In short, the matters not covered by the trial court, and the answers and conduct of the defendant indicated he did not knowingly and

intelligently waive his right to counsel and it was an abuse of discretion for the trial court to so find and for the court of appeals to affirm.

2.       **The Questions for Review:**

1.     Does the persistence of a defendant in demanding to represent himself constitute a knowing and intelligent waiver of counsel when the trial court does not explore alternatives to dissatisfaction with counsel and fails to cover nature of the charges, possible defenses to the charges and circumstances in mitigation thereof as part of the *Faretta* hearing, and the defendant indicates he is essentially ignorant of procedural and evidence law.

V.

ARGUMENT

This is a case in which the defendant, without being able to swim, jumped into the deep end of the courtroom pool after being warned not to do so.  The trial court approved it because the judge thought he had to, and the court of appeals affirmed it because it believes the trial court had to.

The defendant was indicted for aggravated sexual assault of a child, and despite having a court-appointed counsel, became dissatisfied with him and asked the court to allow him to do his jury trial *pro se*.

4

**What Happened in the Trial Court:**

Pre-trial hearing

A *Faretta* hearing was held on May 23, 2013 (2 RR 1 – 33) regarding the appellant's request to represent himself in the trial of his case. The defendant's then-attorney Mr. Stephen Gordon stated that his client was competent in his opinion, and the court indicated that Mr. Barski had filed a letter asking to represent himself. (2 RR 4) The court told him that if the court granted the motion that Mr. Gordon could no longer provide legal advice, and could only act as a go between for such things as moving things around courtroom. (2 RR 5) The defendant said he felt it would be in the best interest of everyone in the case if he represented himself (2 RR 6, 7) but did not explain what he meant by that and the trial court did not ask. He said he had obtained a GED in 2006, that he's 24 years old, has never had any college, scanned criminal procedure law a couple of weeks earlier, but had not been able to go the law library for the last week and a half, has never looked at or understood the laws of evidence and thinks that an objection is when somebody has said something against him and he objects to it. (2 RR 7, 8) The trial judge explained that it is more complex than simply standing up in objecting to the evidence because it is against the him.

5

At this point the defendant said "let's hope it doesn't happen Your Honor." (2 RR 10) Mr. Gordon recommended that the defendant not represent himself. (2 RR 11) The judge warned him that by speaking on his own behalf the jury may take that as his testimony and that the jury can take that for any and all purposes thereby waiving his right to remain silent. (2 RR 12) In response to questions from the court about the law and procedures, i.e., important 6th Amendment functions of a trial attorney, how the jury selection process works, how many strikes and what kind of strikes, the effect of conviction of a charge of continuous sexual abuse on parole, the defendant indicated that he had no idea of the answers. (2 RR 12, 14, 17)

The court told him that Mr. Gordon would not be assisting him in obtaining attendance of witnesses, and that his role would be standby counsel strictly for purposes of trial. (2 RR 19) The court told him that the court was not going to release him so he could do the things necessary to obtain the attendance of witnesses. The court also told him that Mr. Gordon would not be sitting beside him and giving him strategy tips, that he would be seated behind him and only during breaks confer with him. (2 RR 19)

Further the state, because of the *pro se* representation was terminating its open file policy and requiring formal discovery requests from the defendant. (2 RR 20) The court also told him that the discovery materials

obtained by Mr. Gordon would not be shared with the defendant and the defendant would have to file his own motions for discovery, even though the prior motions had been filed by Mr. Gordon. (2 RR 21, 22)

The defendant said he went to the law library to see what he could do about subpoenas and the person in charge said he could not handle his own subpoenas even if he represented himself. He then said he did not know how he was going to get a witness if they will not give him the paperwork he needs to do that. (2 RR 22 – 23)

The trial court said it was trying to do all it could to encourage him not to represent himself. (2 RR 23) The defendant stated that he still wanted to represent himself. (2 RR 24) The court indicated that Mr. Gordon would be standby counsel. (2 RR 25) The court also told Mr. Gordon to be prepared to assume responsibility for the trial at the last minute in the event that Mr. Barski decided not represent himself.

The trial court said it would order the sheriff's department to make the library available to the defendant during normal business hours. (2 RR 28)

Defendant filed a request for probation because he had no prior felony conviction, even though he was not eligible for it, based on the charge. (4 RR 12, 13) The prosecutor stated during voir dire that there was no eligibility for probation. (4 RR 105, 108) Even after that, during voir dire,

7

the defendant told the jury they could give him probation-a statement the prosecutor challenged. (4 RR 160-161) Then on closing argument during punishment he referenced the possibility of them giving him probation. (6 RR 107)

Voir Dire

During voir dire the panel members were moved to speak up about his *pro se* representation. At **4 RR 130**:

> PROSPECTIVE JUROR: In my feelings right now, I personally do not feel that you're competent enough to defend yourself in this case. I think that you might need to confer more with your co-counsel because right now, it's -- you seem very scattered.
>
> THE DEFENDANT: Yeah, it's pretty obvious.

At **4 RR 131**:

> PROSPECTIVE JUROR: My name is RB[1], I'm Juror No. 8, and I still feel reservations about your competency to defend yourself.
>
> THE DEFENDANT: Well, if that's the case --if that's the case, then I hope I'm not out of line of saying this, but, you know, I was given questions and everything like that by a -- by a doctor, so – an expert, in other words.
>
> PROSPECTIVE JUROR: I do not mean that you're not intellectually capable of doing it. I just believe that you're not fully versed on what you – you need to do to defend yourself.
>
> THE DEFENDANT: And you're absolutely right because, you

---

1 Initials instead of names are being used.

know, I only have like one chance to go through to a law library in the two weeks that I was told that, you know, I was going to go to trial. So I think it was the 23rd of May until last Friday, that was the only time I was able to get access into the law library. So you're right when you say that, but, you know, I just hope that that doesn't, you know, impede your judgment on me, in other words. I know -- I know it's crazy, but -- I know it's crazy, but I just feel it's something I have to do.

At **4 RR 132**:

PROSPECTIVE JUROR: So it seems to me that you are hurting yourself.

THE DEFENDANT: Okay.

PROSPECTIVE JUROR: Gravely hurting yourself. It doesn't have anything to do with honesty.

THE DEFENDANT: Well –

PROSPECTIVE JUROR: Because of your lack of knowledge.

And after another prospective juror expressed concern, the defendant stated the following.

At **4 RR 135-136**:

THE DEFENDANT: Let me ask you then: How do you feel about a lot of these, you know, the tornados for one? I mean, you get a lot of increase in flooding, a lot of horrible things going wrong in the world, a lot of natural disasters that are really kind of unnatural in our time and day that we live in? How do you feel about that?

At **4 RR 136**:

PROSPECTIVE JUROR: Can you still get legal representation?

9

THE DEFENDANT: If I wanted to, yes.

PROSPECTIVE JUROR: Take it.

And in response to another prospective juror:

At **4 RR 137**:

THE DEFENDANT: Let me just say that, you know, as far as I'm concerned, I really -- you know, I honestly don't care about what happens to me. I really care about what happens to everybody involved.

**The Law**

The questions in this appeal are 1) Did the trial court sufficiently cover the issues required by law and 2) Is the trial court required to grant a request for *pro se* representation in the face of obvious ignorance of the law and incoherence of the defendant?

A waiver[2] of the right to counsel[3] will not be lightly inferred, and the courts will indulge every reasonable presumption against the validity of such a waiver. *Geeslin v. State,* 600 S.W.2d 309, 313 (Tex.Crim.App. [Panel Op.] 1980). A waiver of counsel must be made competently, knowingly and intelligently, and voluntarily[4]. *Collier v. State,* 959 S.W.2d 621, 625–26

---

2 *Faretta v. California,* 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975)
3 A defendant in a criminal trial has the right to assistance of counsel. Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution. *Fulbright v. State*, 41 S.W.3d 228, 234 (Tex. App.—Fort Worth 2001, pet. ref'd)
4 It is voluntary if uncoerced. *Fulbright v. State*, 41 S.W.3d 228, 234 (Tex. App.—Fort Worth 2001, pet. ref'd)

(Tex.Crim.App.1997).  A heavy burden rests upon the prosecution to demonstrate an intelligent, voluntary, and knowing waiver of constitutional rights, particularly as applied to the right to retained or appointed counsel. *Williams v. State*, 194 S.W.3d 568, 576-77 (Tex. App.—Houston [14th Dist.] 2006), *aff'd,* 252 S.W.3d 353 (Tex. Crim. App. 2008)

When a defendant asserts his *pro se* rights, analysis must center *not* on a traditional waiver of counsel analysis, but on whether the defendant is aware of the dangers and disadvantages of self representation. Thus the focus of a trial court's admonishments of a defendant wishing to proceed *pro se* is on the knowing and intelligent assertion of the right to self representation. *Johnson v. State*, 760 S.W.2d 277, 278 (Tex. Crim. App. 1988)

The court must determine not only that the defendant wishes to waive his right to counsel, but that he understands the consequences of such waiver.  *Manley v. State*, 23 S.W.3d 172, 173-74 (Tex. App.—Waco 2000, pet. ref'd)  As stated in *Williams v. State*, 925 S.W.2d 272, 275 (Tex. App.—Corpus Christi 1996, no pet.) ["... A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." *von Moltke v. Gillies,* 332 U.S. at 723–24, 68 S.Ct. at 323."]  *Faretta* does not authorize trial

judges to sit idly by doling out enough legal rope for defendants to participate in impending courtroom suicide. *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984); *Williams v. State*, 194 S.W.3d 568, 577 (Tex. App.—Houston [14th Dist.] 2006), *aff'd,* 252 S.W.3d 353 (Tex. Crim. App. 2008);

By extension when the trial court sees that the defendant is in the process of committing courtroom suicide he or she should intervene.

Allowing a defendant to represent himself without a valid waiver of the right to counsel, denies his constitutional right to be represented by counsel. *Fernandez v. State*, 283 S.W.3d 25, 31 (Tex. App.—San Antonio 2009, no pet.)

The trial court must examine the defendant "assiduously" as to his knowledge and intent to ensure that the election is not a hollow incantation of a legal formula, but a purposeful, informed decision to proceed pro se. *Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984)

> To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments, thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which a plea is tendered.

Here the judge at the *Faretta* hearing admitted he did not know the facts of the case regarding covering the required matters. "And there may be others that I haven't covered with you specifically because I don't know anything in terms of the facts of the case." (2 RR 24) If the judge doesn't know the facts he cannot very well make sure the defendant is apprised of the "nature of the charges, the statutory offenses included within them, the range of allowable punishments, thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."

Further, merely explaining the dangers and disadvantages is not sufficient. The court must also take into consideration the responses of the defendant to the court's questions to determine whether self-representation should be allowed. See *Crawford v. State*, 136 S.W.3d 417 (Tex. App.—Corpus Christi 2004, no pet.) [The defendant did not knowingly and intelligently waive his right to appellate counsel, stating "Crawford has only a vague knowledge of appellate rules, limited access to the courts, and difficulty with research. While we respect Crawford's genuine desire to proceed without appellate counsel, we conclude that it would not be in his

best interest to do so."[5]  Although *Crawford* was decided on the basis of a statutory right to appellate *pro se* representation, the factors of "knowingly and intelligently" were determined by the trial court, the same factors at play here.

The right to assistance of counsel and the correlative right to dispense with a lawyer's help rest on considerations that go to the substance of an accused's position before the law. *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 241-42, 87 L. Ed. 268 (1942)  The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. Id.

---

5 In Texas an appellant has the right to  appellate *pro se* representation as well as trial *pro se* representation.  *Webb v. State*, 533 S.W.2d 780, 783 (Tex. Crim. App. 1976); *Martinez v. State,* 163 S.W.3d 88, 90 (Tex. App.—Amarillo 2004, no pet.); *Ex parte Davis*, 818 S.W.2d 64, 66 (Tex. Crim. App. 1991) ["In *Webb,* this Court applied the reasoning of *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and held that the right of an accused to reject the services of counsel and represent himself extends to the appellate process."]

The self-representation right must yield to the most basic of the Constitution's criminal law objectives, providing a fair trial. *Indiana v. Edwards*, 554 U.S. 164, 176-77, 128 S. Ct. 2379, 2387, 171 L. Ed. 2d 345 (2008) (Mentally ill defendant) Proceedings must not only be fair, they must appear fair to all who observe them.

Courts must examine the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008) The information a defendant must possess in order to make an intelligent election will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding. *State v. Guerrero*, 400 S.W.3d 576, 582-83 (Tex. Crim. App. 2013)

**Trial Court Admonishments**

The trial judge who conducted the hearing did a commendable job of urging the appellant to not forego counsel, and addressed several areas in questioning him. However while the trial court discussed evidence, procedure and range of punishment, the court did not address sufficiently the areas such as nature of the charges, possible defenses to the charges and

15

circumstances in mitigation thereof as required by *Blankenship v. State*, 673 S.W.2d at 583.

When the request was filed by the defendant in the papers of the cause (CR 85) it was couched in terms of dissatisfaction with his counsel, stating:

> Defendant seeks to represent himself because the attorney-client relationship between Christopher A. Barski and Steve Gordon has not been established enough that Christopher A. Barski feels confident he is being represented effectively in this case.

Despite that the trial court did not explore why he felt he was not being represented effectively and attempt to determine whether the issue should be dealt with on that basis rather than simply assuming that self-representation was the answer.[6]

The totality of the facts indicated that:

- He knew nothing of evidence law or procedure, and expressed blind hope that he would not need to. (2 RR 7-17) He operated throughout the trial under the incorrect belief he was eligible for probation. (4 RR 12, 13, 105, 108, 160-161) (6 RR 107)

- He was 24 years old with a GED, but no college. (2 RR 7, 8)

- He was not given sufficient access to the law library despite the judge's promise. (2 RR 28)  (4 RR 8, 131)

---

6 Dissatisfaction with an attorney is not, alone, sufficient to constitute a demand for self-representation. See *DeGroot v. State*, 24 S.W.3d 456, 458 (Tex. App.—Corpus Christi 2000, no pet.)

- The trial court refused to release him to obtain witnesses or allow his standby counsel to do so despite his stated concern that he could not get a subpoena issued since the clerk would not cooperate with him as a *pro se* defendant. (2 RR 19-23)

- He was looking out for everyone else in his exercise of expiation. (2 RR 6, 7) (4 RR 137) ["I honestly don't care about what happens to me."]

- The judge failed to go over possible defenses, (indicating he did not know of any), and further failed to inquire as to what the defendant meant when he said he felt it would be in the best interest of everyone in the case if he represented himself. (2 RR 6, 7)

- The trial court did not explore whether the dissatisfaction with his attorney could be resolved without *pro se* representation.

Is the trial court required to grant a request for *pro se* representation in the face of obvious ignorance of the law and incoherence of the defendant? The trial court believed it had no choice. (2 RR 6)

It is the position of the petitioner that the trial court failed to fully explore alternatives to *pro se* representation and cover all the factors, and that the mere insistence by the defendant on proceeding *pro se*, despite the

belief of the trial court and the court of appeals, was not required, as the defendant did not evidence intelligent and knowing waiver of counsel, given his conduct and statements.

The Court of appeals erred by basing its affirmance on the trial judge going over certain factors coupled with the defendant's insistence on self representation, (Opinion page 6) which misapplied the law by neglecting the trial court's responsibility to cover additional matters, to explore an alternative to *pro se* representation, and assess the conduct and responses of the defendant to determine whether his *pro se* request was done intelligently and knowingly.

The decision to approve the waiver and continue the waiver, under these circumstances, constituted an abuse of discretion, given the omissions in the trial court's admonishments in the *Faretta* hearing, the answers the defendant gave to the court's questions and his other statements set out above, possible defenses[7] to the charges and circumstances in mitigation thereof. The trial court's inquiry is still required even if standby counsel is appointed. *Grant v. State*, 255 S.W.3d 642, 647 (Tex. App.—Beaumont 2007, no pet.)

---

7 The court, in reference to defenses stated "Now, with regard to any potential defenses -- and I don't know if there's any potential defenses that could possibly exist under this type of charge…" (2 RR 11) The court then went on to advise that he would be waiving his right to remain silent because the jury would hear him making any defense.

To assess whether a waiver is effective, courts consider the totality of the circumstances, i.e., courts examine "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Williams v. State*, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008)

When the record does not affirmatively show that the defendant was sufficiently admonished as required by *Faretta,* it is reversible error, not subject to a harm analysis. *Williams v. State*, 252 S.W.3d 353, 357 (Tex. Crim. App. 2008)

Because the trial judge had told defendant's former attorney (now standby counsel) to be ready to try the case immediately, (2 RR 25, 32) the attorney could have taken over the defense of the case at any time. There would have been no disruption in the orderly proceeding of the trial, a concern that accompanies a switch from *pro se* representation to appointed counsel.

The trial judge who was hearing the case (not the same judge who conducted the *Faretta* hearing), having witnessed the above during voir dire should have terminated the defendant's self-representation and ordered the standby counsel to take over the defense. Her failure to do so was a

continuing abuse of discretion to that of the judge approving the initial request to proceed *pro se*.

The Court of Appeals erred in its review of the abuse of discretion committed by the trial court in approving the *pro se* representation.

## VI.

## PRAYER FOR RELIEF

Based on the above and foregoing, the Petitioner respectfully requests that the Court of Criminal Appeals, grant the Petition for Discretionary Review, and upon consideration of the case to vacate the court of appeals' judgment, find that the trial court erred in allowing the defendant to proceed *pro se*, and set aside the conviction and remand the case for a new trial. Petitioner requests all other relief to which he is entitled.

Respectfully submitted,

Law Office of Paul Francis
P.O. Box 13369
1178 W. Pioneer Parkway
Arlington TX 76013-6367
(817) 543-2600 Telephone
(817) 549-7098 Facsimile
pfrancis@birch.net Email

By: /s/ Paul Francis
    Paul Francis
    State Bar No. 07359600

ATTORNEY FOR PETITIONER,

CHRISTOPHER ANTHONY
BARSKI

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the number of words in this document, as computed in accordance with Tex.R.App.P. 9.4(i) using the Word Count function of Microsoft Word is 4,177.

/s/ Paul Francis
Paul Francis

## CERTIFICATE OF SERVICE

A true and correct copy of the above and foregoing was served upon the following persons in accordance with Texas Rule of Appellate Procedure 9.5, on this September 11, 2015.

Debra Windsor
Tarrant County Justice Center
401 W. Belknap
Fort Worth TX 76196-0001

Lisa C. McMinn
State Prosecuting Attorney
P.O. Box 13046
Capitol Station
Austin, Texas 78711

/s/ Paul Francis
Paul Francis

# APPENDIX



11TH COURT OF APPEALS
EASTLAND, TEXAS
JUDGMENT

Christopher Anthony Barski,            * From the 432nd District
                                        Court of Tarrant County,
                                        Trial Court No. 1326714R.

Vs. No. 11-13-00217-CR                  * August 21, 2015

The State of Texas,                     * Memorandum Opinion by Bailey, J.
                                         (Panel consists of: Wright, C.J.,
                                         Willson, J., and Bailey, J.)

     This court has inspected the record in this cause and concludes that there is no error in the judgment below. Therefore, in accordance with this court's opinion, the judgment of the trial court is in all things affirmed.



## In The

# Eleventh Court of Appeals

_____

### No. 11-13-00217-CR

_____

## CHRISTOPHER ANTHONY BARSKI, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 432nd District Court**
**Tarrant County, Texas**
**Trial Court Cause No. 1326714R**

### M E M O R A N D U M   O P I N I O N

Christopher Anthony Barski appeals his jury conviction for aggravated sexual assault of a child under fourteen years of age. *See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B) (West Supp. 2014). The jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty-four years. Appellant presents three issues on appeal. First, he asserts that he did not effectively waive his right to counsel. Second, he argues that the trial court erred when it did not let standby counsel share notes with him. Third, he argues

that he was denied due process of law because the State allowed him minimal sleep and kept some of his notes from him prior to the second day of trial. We affirm.

*Background Facts*

Appellant's brother and J.G. had three children together from their prior relationship. Appellant occasionally stayed in J.G.'s living room on weekends. Appellant would visit with J.G. and her children while he stayed at J.G.'s house. One of the children, S.E. (Appellant's niece), was the victim of Appellant's alleged sexual abuse. S.E. was eight years old at the time.

S.E.'s younger sister notified J.G. that Appellant would come into their bedroom and wake up S.E. S.E. confirmed to J.G. that it was true. S.E. went on to tell her mother that Appellant woke her up one night, took her into the kitchen to get food, and then took her into the living room with him. Once in the living room, Appellant sat S.E. on top of him. S.E. told J.G. that Appellant "was vibrating" and "doing bad things to her." Specifically, S.E. told J.G. that Appellant touched her "private part" after he unbuckled her pants. S.E. testified that Appellant touched her "in the place where he was not supposed to," which she agreed was her "private part." J.G. confronted Appellant about S.E.'s accusations, and Appellant responded, "I don't know why I did that," then he shook his head and apologized to J.G. Further, J.G. said that Appellant never denied the accusations.

Prior to trial, Appellant filed a pro se motion requesting permission to represent himself at trial. The trial court held a *Faretta* hearing to determine whether Appellant fully understood his right to counsel. *Faretta v. California*, 422 U.S. 806 (1975). The trial court admonished Appellant against representing himself and noted, "And -- and I'm going to tell you, quite frankly, I think it is not a good idea, but it is ultimately your absolute right under the federal and state constitutions to freely represent yourself." Appellant replied that he felt that it was in his best interest to represent himself. The trial court questioned Appellant extensively about his

2

education, his understanding of the law, the phases of trial, and his waiver of counsel. After the trial court admonished Appellant and Appellant had a discussion with his appointed counsel, Appellant elected to represent himself. Appellant's appointed counsel was ordered to serve as standby counsel at trial.

*Analysis*

In his first issue, Appellant argues that the trial court erred when it allowed him to represent himself at trial because he did not effectively waive his right to counsel. Appellant contends that the trial court abused its discretion in allowing him to represent himself because "his waiver of counsel was not done competently, knowingly and intelligently, and voluntarily."

In all criminal prosecutions, the accused has a right to the assistance of counsel for his defense. U.S. CONST. amend. VI; *Williams v. State*, 252 S.W.3d 353, 355 (Tex. Crim. App. 2008) (citing *Gideon v. Wainwright*, 372 U.S. 335, 340–45 (1963)). An indigent defendant is entitled to appointed counsel unless the defendant competently, intelligently, and voluntarily waives the right to counsel. *Williams*, 252 S.W.3d at 356; *Collier v. State*, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997). The Sixth Amendment also includes the reciprocal right of self-representation. *Williams*, 252 S.W.3d at 356 (citing *Faretta*, 422 U.S. at 818). The right to self-representation does not attach until it has been asserted clearly and unequivocally. *Id.*; *Funderburg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986).

Once the right has been asserted, under *Faretta*, the court must admonish the defendant as to the "dangers and disadvantages of self-representation, so that the record will establish that he knows what 'he is doing and his choice is made with eyes open.'" *Williams*, 252 S.W.3d at 356 (quoting *Faretta*, 422 U.S. at 835). As stated by the court in *Williams*:

> When advising a defendant about the dangers and disadvantages of self-representation, the trial judge must inform the defendant "that there are

3

technical rules of evidence and procedure, and he will not be granted any special consideration solely because he asserted his *pro se* rights." [quoting *Johnson v. State*, 760 S.W.2d 277, 279 (Tex. Crim. App. 1988)]  But a trial judge has no duty to inquire into an accused's "age, education, background or previous mental [health] history in every instance where an accused expresses a desire to represent himself[.]" [quoting *Goffney v. State*, 843 S.W.2d 583, 584–85 (Tex. Crim. App. 1992)]

*Id.* Courts indulge every reasonable presumption against waiver and do not presume acquiescence in the loss of fundamental rights. *Id.* The trial judge is responsible for determining whether a defendant's waiver is knowing, intelligent, and voluntary. *Id.* To assess whether a waiver is effective, courts consider the totality of the circumstances. This means that courts must examine the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *Id.* The trial court is not required to follow a particular script of questions and warnings to establish a knowing and intelligent waiver. *See Blankenship v. State*, 673 S.W.2d 578, 583 (Tex. Crim. App. 1984). As noted recently by the Texarkana Court of Appeals, *Faretta* establishes that if (1) the accused clearly and unequivocally declares to the trial court that he wants to represent himself and does not want counsel; (2) the record affirmatively demonstrates that the accused is competent, literate, and understanding and that he is voluntarily exercising his informed free will; and (3) the trial court warns the accused of its opinion that it is a mistake not to accept the assistance of counsel and that the accused will be required to follow all ground rules of trial procedure, then the right of self-representation cannot be denied. *Dolph v. State*, 440 S.W.3d 898, 902 (Tex. App.—Texarkana 2013, pet. ref'd) (citing *Faretta*, 422 U.S. at 835–36).

In the present case, the record affirmatively demonstrates that Appellant insisted on representing himself after the trial court warned him of the dangers and disadvantages of such a choice. Prior to trial, Appellant made a written motion to

represent himself despite already having the assistance of appointed counsel. At the hearing on the motion, Appellant argued that he wanted to represent himself because he felt that it was in "the best interest of everyone involved in the case." At the end of the hearing, Appellant again confirmed his desire to represent himself despite the trial court's recommendation not to do so.

The trial court determined that Appellant obtained his GED in 2006, and his appointed counsel testified to his belief that Appellant was competent. The trial court explained some dangers of self-representation, and when asked if he understood such dangers, Appellant responded in the affirmative. Specifically, the trial court advised Appellant that "quite frankly . . . it is not a good idea" to represent yourself. The trial court explained what an objection was and how Appellant would likely not know how to properly preserve any potential errors for appellate review. Further, the trial court explained that Appellant would waive his right to remain silent because he would necessarily have to speak in front of the jury during the trial. The trial court also informed Appellant of the range of punishment he faced if convicted.

In regard to issuing subpoenas to procure witness attendance, the trial court advised Appellant that he was "going to be held to the same standard" as an attorney doing the same work. Appellant was made aware that he would be responsible to file all pretrial motions in accordance with the law and that failure to do so would result in waiver. The trial court noted that there was a chance Appellant might waive some defenses to the crime charged because Appellant's knowledge of the law, as demonstrated by his answers to the trial court's questions, was limited. The trial court made clear that it would not be able to help Appellant at trial and stated, "After this hearing, you are on your own. And when this case comes to trial . . . you better be ready to go."

Near the conclusion of the hearing, the trial court reiterated that it was going through "all the potential warnings [it could] possibly give" to encourage Appellant not to represent himself. It again made clear to Appellant that "it's a mistake for you to" represent yourself. Appellant's appointed trial counsel also advised Appellant not to represent himself. After such admonishments and warnings, Appellant conferred with his counsel and nevertheless said, "I'll represent myself, Your Honor." Appellant also signed a waiver of his right to counsel. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(f) (West Supp. 2014).

Appellant argues that the trial court "did not address sufficiently the areas such as nature of the charges, possible defenses to the charges and circumstances in mitigation thereof as required." We disagree. The trial court questioned Appellant about his understanding of the charges and how a potential conviction from those charges would affect his eligibility for parole. Although the Appellant understood only a "little bit" of the law in that regard, the trial court then asked Appellant's appointed counsel the same question and appointed counsel explained the law for Appellant. Appointed counsel also indicated that he had discussed the charges with Appellant. Furthermore, as indicated above, the trial court admonished Appellant that self-representation may result in an unintended waiver of defenses.

The record establishes that Appellant insisted on representing himself after the trial court warned him of the dangers and disadvantages of such a choice. We find that the record contains proper admonishments concerning pro se representation and all necessary inquiries to enable the trial court to assess Appellant's knowing exercise of the right to defend himself. *See Goffney*, 843 S.W.2d at 585. Appellant's persistence in asserting his right of self-representation despite the court's admonishments was all that was required in order for the court to determine that the assertion was made purposefully. *See Burgess v. State*, 816 S.W.2d 424, 426, 429

(Tex. Crim. App. 1991); *Blankenship*, 673 S.W.2d at 583 (quoting *United States v. Tompkins*, 623 F.2d 824, 825 (2d Cir. 1980)); *Dolph*, 440 S.W.3d at 904.

Appellant additionally asserts that the trial court should have terminated Appellant's self-representation and ordered standby counsel to take over his defense when potential jurors expressed concerns during voir dire about his ability to represent himself. We disagree with Appellant's contention that his purportedly deficient performance at trial rendered his decision to represent himself invalid. The Supreme Court noted in *Faretta*:

> We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire. For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of [his] right to defend himself.

*Faretta*, 422 U.S. at 836 (footnote omitted). We overrule Appellant's first issue.

In his second issue, Appellant argues that the trial court erred when it refused to let his appointed counsel share with him the information appointed counsel received via the State's open-file policy without first conducting an in camera inspection. Prior to Appellant invoking his right of self-representation, the State had an open file policy with Appellant's appointed counsel through which the State provided appointed counsel information to assist in his defense of Appellant. The State revoked the open file policy, however, when appointed counsel became standby counsel due to Appellant's election to represent himself.

The trial court informed Appellant that the information obtained by his appointed counsel under the open file policy could not be shared with Appellant. Rather, the trial court explained, if Appellant wanted to access the information he was "going to have to understand the Code of Criminal Procedure and file the appropriate Motions for Discovery." Appellant claims that the trial court should

7

have reviewed the information in camera before ruling that he was not allowed to receive any of the information from his standby counsel.

The record shows that Appellant did not object after the trial court ruled that standby counsel could not share the information with him. Additionally, Appellant did not ask the trial court to inspect the information in camera before making its ruling. Appellant failed to make any requests for discovery despite the trial court's instruction that Appellant could obtain the information at issue via applicable discovery procedures available to him.[1] Furthermore, the record shows that Appellant had access to everything his standby counsel received from the State's open file, despite the trial court's prior ruling that he would not have access to such information. At the end of the guilt/innocence phase of trial, the prosecutor said he had "turned over everything to Defense -- to the [standby] counsel . . . and I believe [standby counsel] has turned over everything, including police reports, copies of witness statements, videos of statements and made them available to the Defendant for purposes of this trial." Appellant's standby counsel then responded, "Standby counsel has done that."

"Ordinarily, to preserve an issue for appellate review, an appellant must have first raised the issue in the trial court." *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013); *see* TEX. R. APP. P. 33.1(a)(1).

> [A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.

*Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).

---

[1]Appellant did orally request to inspect grand jury testimony, which the trial court granted, but there was no grand jury testimony available in this case.

Error can only be committed when the trial judge refuses a specific request for action or takes action over objection. *Michaelwicz v. State*, 186 S.W.3d 601, 610 (Tex. App.—Austin 2006, pet. ref'd). Appellant did not preserve his complaint for appellate review because he did not request the trial court to conduct an in camera review of the information obtained by appointed counsel. Furthermore, the record affirmatively demonstrates that Appellant did in fact receive the information from appointed counsel "for purposes of [the] trial." We overrule Appellant's second issue.

In his third issue, Appellant contends that the trial court erred when it forced him to proceed with a hearing on a motion to suppress at the beginning of the second day of trial. The motion to suppress concerned a video interview of Appellant. At the beginning of the day's proceedings, Appellant informed the trial court that he was not permitted to go back to the jail facility where he was regularly incarcerated after the end of the previous day's proceedings and that he had not been able to get "any sort of solid sleep" until after breakfast because of the circumstances of his incarceration in a "holdover" cell. He stated that he was not ready to proceed. Appellant explained that he was "just really, really tired." He further claimed that he did not have access to some of his notes because they were kept at the other jail facility. The trial court noted that attorneys regularly deal with lack of sleep during trials and that Appellant participated during the previous day of trial without his notes.

After briefly questioning Appellant about the basis for his motion to suppress, the trial court proceeded with a hearing on the motion because "the State has [its] witness here." Detective Tony Miller of the Haltom City Police Department testified that he received a call from Appellant. Detective Miller made an appointment for Appellant to come to the police station to be interviewed. Detective Miller testified that Appellant was not placed under arrest or taken into custody at any time prior to

9

or during the interview and that he advised Appellant that he was free to leave at any time. He additionally testified that Appellant was not taken into custody after the interview concluded and that he was permitted to leave afterward. When the prosecutor passed Detective Miller to Appellant for cross-examination, Appellant advised the trial court as follows:

> Your Honor, considering the circumstances to the fact, you know, I was never placed under arrest or anything like that, I -- I guess it is pretty evident that this -- you know, this confession could be used in court, and I have no objection to that, Your Honor.

After a brief recess, the trial court advised Appellant that it was going to make arrangements for deputies to transport him to the jail facility where he was regularly incarcerated so that he could retrieve his paperwork. The trial court further advised that it was going to make arrangements for Appellant to be housed "downtown" for the remainder of the trial. The trial court then made the following statement to Appellant:

> What I want to give you a choice of, we just had the hearing where you said that you basically don't have an objection to the interview with the detective. We can either do the detective's testimony this morning and play the videotape this morning, and then you can have the afternoon off to rest and have your paperwork and be prepared to proceed tomorrow; or I can give the jury the morning off, give you the opportunity to get your paperwork and get some rest, and we could start back like around 2:00 o'clock this afternoon and then just work late tonight to proceed with that testimony. What -- what's your preference?

After conferring with standby counsel, Appellant advised the trial court that he was ready to proceed that morning and that he "[had] all that [he] was really needing right here." The trial court responded as follows:

> If you say that you are ready to proceed today and you feel fine and that you want to go forward, what I will assure you is that after the detective's testimony, I'm going to make sure that the deputies have all of your stuff from [the original jail facility] to you, and we'll also take

a longer lunch than usual to give you a little bit of time to rest up after the detective.  Does that sound fair to you?

Appellant replied in the affirmative to the trial court's inquiry.  Immediately prior to recessing for lunch, the trial court inquired into Appellant's preference for continuing the trial that afternoon.  Appellant advised the trial court that he wanted to continue with the trial that afternoon.

A motion for continuance must be written and sworn.  TEX. CODE. CRIM. PROC. ANN. arts. 29.03, 29.08 (West 2006).  "A motion for continuance not in writing and not sworn preserves nothing for review."  *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999).  There is no due process exception to those requirements.  *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012); *Anderson v. State*, 301 S.W.3d 276, 280–81 (Tex. Crim. App. 2009).  Accordingly, Appellant did not present a valid motion for continuance based upon his oral statement that he was not ready for trial.

Even if Appellant had sufficiently presented a motion for continuance, we would review the trial court's ruling for an abuse of discretion.  *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996).  To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion.  *Gallo*, 239 S.W.3d at 764; *Janecka*, 937 S.W.2d at 468.  Appellant was not prejudiced by the trial court's decision to proceed with the motion to suppress.  After Detective Miller offered his very brief testimony about the circumstances surrounding Appellant's interview, Appellant informed the trial court that he no longer had an objection to the admissibility of the interview.  Accordingly, Appellant was not harmed by the trial court's decision to proceed with the motion to suppress.  Afterward, the trial court offered Appellant various scheduling accommodations so that he could obtain

all of his notes and get some rest before proceeding further. Appellant declined these offers and elected to proceed with the trial. We overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


August 21, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

12